# Exhibit 2

To: 13125896378  From: 13126035500  Date: 07/16/18  Time: 7:18 AM Page: 02
07/16/2018  08:09    13126030134           JUDGE PANTLE                    PAGE  02/06

Case 8:19-cv-00654-PWG   Document 42-2   Filed 08/14/19   Page 2 of 6

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT—CHANCERY DIVISION

| | |
|---|---|
| CITY OF CHICAGO and PEOPLE OF THE STATE OF ILLINOIS *ex rel.* Kimberly M. Foxx, State's Attorney of Cook County,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., a Delaware corporation,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  17 CH 15594<br>)  Hon. Kathleen M. Pantle<br>)<br>)<br>)<br>)<br>) |

## ORDER

Plaintiffs, the City of Chicago and the People of the State of Illinois, sued Defendant Uber Technologies, Inc. in connection with an alleged 2016 data security incident which Uber allegedly failed to disclose to the consumers affected by the data breach. The causes of action are based on violations of the Illinois Personal Information Protection Act, 815 ILCS 530/1 *et seq.* ("PIPA") and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA"). Uber has moved to dismiss contending that Plaintiffs lack statutory authority to bring these causes of action; only the Attorney General has the exclusive authority to prosecute these claims. Uber further argues that the State's Attorney must defer until after the Attorney General concludes an investigation into Uber's activities. Uber also argues that the City has failed to state a cause of action because it is not a "person" as statutorily defined in the ICFA (815 ILCS 505/1) and that the City has not alleged a cognizable injury to itself. Uber also argues that the claims of the State's Attorney are not in the public interest. This motion is brought pursuant to 735 ILCS 5/2-619.1.

### SECTION 2-619.1

Section 2-619.1 allows for motions with respect to pleadings under Section 2-615, motions for involuntary dismissal or other relief under Section 2-619, and motions for summary judgment under Section 2-1005 to be filed together as a single motion in any combination provided that the motion is in parts. 735 ILCS 5/2-619.1. Each part shall be limited to and shall specify that it is made under either Section 2-615, Section 2-619, or Section 2-1005. *Id.* Each

1

part shall also clearly show the points or grounds relied upon under the Section upon which it is based. *Id.*

A 2-615 motion differs from a 2-619 motion in that a 2-615 motion only attacks the legal sufficiency of the complaint on its face. *Barber-Coleman Co. v. A & K Midwest Insulation, Co.*, 236 Ill. App. 3d 1065, 1069 (5th Dist. 1992). A Section 2-615 motion is solely based on the pleadings and accepts all well pled facts as true. *Id.* In contrast, a 2-619 motion asserts other affirmative matter which defeats the claim. *Id.* at 1074. It admits all well-pleaded facts as true save those facts that may touch on the affirmative matters raised in defendant's 2-619 motion and thus ultimately serve to defeat the claim. *Id.*

## ANALYSIS

### *The State's Attorney may bring claims under the ICFA*

Under the plain language of the ICFA, the State's Attorney may prosecute claims under the ICFA. 815 ILCS 505/7(a). The legislature expressly granted this authority to the State's Attorney of each county in 1986. The State's Attorney is not limited in the types of relief she may seek, either, as she (like the Attorney General) may seek injunctive relief under certain circumstances. *Id.* Notably, there is no language in the ICFA that limits the State's Attorney's power to bring a claim under the ICFA to circumstances such as the Attorney General's unwillingness to proceed or express permission by the Attorney General. Given the plain language of the ICFA, Uber's arguments that the State's Attorney has no authority to prosecute these claims or that the State's Attorney must defer to the investigation being done by the Attorney General fail.

Uber's argument posited in its reply brief, *i.e.* that the State's Attorneys in each of the 102 counties of Illinois could bring 102 complaints about the same data breach against Uber if the Court allows this complaint to proceed fails. First, this is an argument better directed to the General Assembly as it must have known when it empowered 102 State's Attorneys to directly plead claims under the ICFA without deferring to the Attorney General that multiple complaints alleging the same or similar ICFA claims against corporations who do business in many or all of Illinois' counties could be filed. Second, and more importantly, the courts are equipped to handle multiple complaints filed in different counties when the complaints allege the same or similar causes of action. Cases filed in more than one Illinois county that seek the same relief on behalf of a group of individuals can be consolidated across county lines. *See e.g. Heaton v.*

2

*Quinn, (In re Pension Reform Litigation)* 2015 IL 118585, ¶¶ 1, 32 (cases filed in Sangamon County, Champaign County and Cook County that challenged pension reform litigation passed by the legislature were consolidated in the circuit court of Sangamon County.)

### *The State's Attorney's claims are in the public interest*

Uber contends that the State's Attorney's claims are not in the public interest and that her claims are speculative. Contrary to Uber's arguments, there is nothing speculative about the facts as pleaded. The State's Attorney alleges that there was a data breach which resulted in potential disclosure of certain Uber users' names, email addresses, driver's license numbers, but not their social security or credit card numbers. Uber relies on a case from California involving a data breach (in which the same personal identity information was stolen) wherein a federal district court found that there was no obvious, credible risk of identity theft that could result in real, immediate injury because social security numbers and other personally identifying information was not stolen. *Antman v. Uber Techs., Inc.*, 2015 WL 6123054 (N.D. Cal. Oct. 29, 2015). This non-binding opinion is neither persuasive nor instructive. Whether a criminal in possession of names, email addresses, and driver's license numbers could commit identity theft with this limited amount of information is a question of fact not suitable for resolution on a motion to dismiss.

Also, Uber argues that no identity theft has occurred (an argument that is not based on any facts) and therefore the allegation that Uber's actions increased the risk of identity theft is speculative. However, identity theft which occurs as a result of a data security breach is by its very nature secretive. Hackers count on the fact that companies are sometimes slow to discover data breaches and that period of time gives them the opportunity to sell or use the information that they have stolen. At this stage, the Court need not accept as true that any damage from the data breach was cured when Uber paid a ransom to the criminals who stole the data. Uber's failure to warn its customers that their identifying information was stolen extended the period of time in which the information was in the possession of the hackers because the customers were unable to protect themselves against identity theft, e.g. by changing their email addresses or putting fraud alerts with the various credit rating agencies.

### *The City may enforce its own ordinance*

Uber argues that the City is, in reality, bringing claims under PIPA and the ICFA rather than under its own ordinance. This argument fails. The City is clearly bringing its causes of

3

actions under its own Ordinance under the Chicago Municipal Code. MCC § 2-25-090(a). The City may properly pursue claims under the Ordinance regardless of whether it could assert independent claims under the ICFA or PIPA. *See e.g. City of Chicago v. Purdue Pharma L,P.*, 211 F. Supp.3d 1058, 1070 (N.D. Ill. 2016).

Moreover, because the City is a home rule unit under the Illinois Constitution of 1970, it may "exercise any power" and "perform any function" pertaining to its government and affairs, including establishing and enforcing regulations "for the protection of the public health, safety, morals, and welfare." Ill. Const. 1970, art. VII § 6(a). Home rule powers are to be construed liberally. *Id.* Art. VII, sec. 6(m). Home rule powers act concurrently with the State, provided the state legislature has not specifically declared otherwise. *Id.* Art. VII, § 6(i). *See Scadron v. City of Des Plaines*, 153 Ill.2d 164, 188 (1992) ("The Illinois approach [to the home rule] places almost exclusive reliance on the legislature rather than the courts to keep home rule units in line.") (internal quotations omitted).

There is no provision in the ICFA or in PIPA expressly preempting the City's ability to regulate business practices taking place within its borders. Indeed, the City closely regulates Uber in other areas, so the argument that consumer protection is the one area that the City cannot regulate fails. For example, the City controls Uber's access to the airports within the City limits. For years, the City prohibited ride-sharing services from picking up or dropping off passengers at O'Hare and Midway even though the airports are accessible by public roadways. They may now do so with the express permission of the City. The City's ability to restrict or permit access to an airport is an example of the powerful ways in which the City has the authority to regulate the business operations of Uber. Also, the City imposes taxes on Uber rides, another indicator of the City's power to regulate Uber.

The City's Ordinance does not conflict in any way or manner with PIPA or the ICFA. Rather, the ordinance operates concurrently and in harmony with those statutes by seeking to protect consumers from unfair, fraudulent, or deceptive business practices that occur within the City.

### *The City has stated causes of action*

The complaint is straightforward and clearly states causes of action. The City alleges that Uber failed to use industry-standard data protection protocols; failed to expeditiously notify Chicago residents of the 2016 breach; and concealed that breach. The City has sufficiently

4

To: 13125896378   From: 13126035500   Date: 07/16/18   Time: 7:18 AM  Page: 06
07/16/2018  08:09     13126030134        JUDGE PANTLE                  PAGE  06/06

Case 8:19-cv-00654-PWG   Document 42-2   Filed 08/14/19   Page 6 of 6

pleaded an injury as the private data of Uber customers was compromised; yet, Uber failed to notify the consumers so that the consumers could take steps to protect themselves from the breach. There is nothing speculative about the City's claims and the allegations are not conclusory. The City has pleaded ultimate facts and therefore has met its pleadings obligations.

### *A stay of the proceedings is not appropriate*

Alternative, Uber asks the Court to stay these proceedings pursuant to 735 ILCS 5/2-619(a)(3) pending the investigation of the Attorney General. A stay is not appropriate for several reasons. First, a stay is not legally required nor is it even a viable alternative as the legislature has unambiguously granted the State's Attorney authority to proceed without the necessity of deferring to the Attorney General. Second, an "investigation" is not "another action pending between the same parties for the same cause" so section 2-619(a)(3) does not apply. Third, the parameters of the stay are unclear, so, as a practical matter, it would be impossible to decide when the stay should be lifted. The Court has no power to demand that the Attorney General appear in court and answer inquiries about the status of her investigation.

### CONCLUSION

Defendant Uber's motion to dismiss is denied. Defendant is granted twenty-eight days from the date of this Order to answer or otherwise plead to the complaint.

This matter is set for August 28, 2018 at 10:00 a.m.

**DATE: July 16, 2018**

> **ENTERED**
> JUDGE KATHLEEN M. PANTLE - 1775
>
> **JUL 16 2018**
>
> DOROTHY BROWN
> CLERK OF THE CIRCUIT COURT
> OF COOK COUNTY, IL
> DEPUTY CLERK

**Kathleen M. Pantle**

5